John D. AHRENHOLTZ and Pam
D. Ahrenholtz, Appellants
(Plaintiffs),

v.

TIME INSURANCE COMPANY,
a Wisconsin Corporation,
Appellee (Defendant).

No. 98–10.

Supreme Court of Wyoming.

Dec. 11, 1998.

John E. Stanfield of Stanfield & Summerfield Law Office, Laramie, Wyoming, for Appellants.

John A. Sundahl and John A. Coppede of Sundahl, Powers, Kapp & Martin, Cheyenne, Wyoming, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

---

* Chief Justice at time of expedited conference; retired November 2, 1998.

1. Unfortunately, Ahrenholtz does not address these issues in his brief, relying instead on sever-

GOLDEN, Justice.

John and Pam Ahrenholtz (Ahrenholtz) purchased a health insurance policy from Time Insurance Company (Time) with an effective date of May 1, 1994. By its terms the policy excluded coverage for treatment or removal of tonsils or adenoids during the first six months of coverage, except on an emergency basis. In June or July, 1994, Ahrenholtz' daughter began experiencing medical problems related to her tonsils and adenoids. Ahrenholtz' doctor recommended surgery in August, 1994, on a non-emergency basis. Ahrenholtz sought health benefits for the surgery, but Time rejected the claims because of the policy's above-referenced exclusion. Ahrenholtz sued Time, alleging breach of contract, fraud, bad faith, and violation of reasonable expectations. They also sought attorneys' fees and interest because of alleged violations of WYO. STAT. § 25–14–124, which addresses a forty-five day period in which an insurer is to accept and pay or reject claims. The district court granted Time's motion for summary judgment against Ahrenholtz. We affirm that judgment.

## ISSUES

Appellant Ahrenholtz submits the following statement of issues presented for review:[1]

1. Did Time Insurance prove—when the evidence is construed against it and in favor of its policyholder—that all reasonable persons would conclude that Time exercised good faith and dealt fairly in all respects with John and Pam Ahrenholtz in the drafting and sale of its insurance coverage and in the investigation, handling and refusal to pay all claims under it?

2. Did Time prove that no reasonable person would find any merit in any of the causes of action asserted by John and Pam Ahrenholtz?

al arguments which we attempt to address in the opinion.

3. Do the Insurance Department regulations constitute standards of fair insurance practice so as to allow the jury to be instructed that they may consider violations as acts of bad faith?

4. Could a jury determine that Time violated § 26–15–124 (WSA, 1977) in the manner in which it handled the claims of John and Pam Ahrenholtz and could it conclude that Time acted in an unreasonable fashion?

Appellee Time Insurance Company (Time) responds with the following statement of issues:

1. Whether the district court properly granted summary judgment against the insureds' claim for policy benefits for a tonsillectomy/adenoidectomy that occurred within six months of the policy's coverage date where the policy contained an exclusion for such surgeries occurring within the first six months of the policy's coverage.

2. Whether the exclusion provided a reasonable basis for the insurer's decision to deny the insureds' claim for these benefits, entitling the insurer to summary judgment as a matter of law against the insureds on their claim for "bad faith."

3. Whether the district court properly granted summary judgment against the insureds on their "fraud" claim where the insureds failed to show that the insurer made any misrepresentation upon which the insureds relied to their detriment.

4. Whether the insurer's decision to deny the insureds' claim was with cause and reasonable where in denying the claim the insurer relied on an applicable policy exclusion, and thus foreclosing as a matter of law the insureds' statutory claim for attorneys fees.

## FACTS

Ahrenholtz purchased a health insurance policy from Time through an agent, Richard Williams. The policy was issued with an effective date of May 1, 1994. In June or July of that same year, Ahrenholtz' infant daughter began experiencing obstructive symptoms at night, sleep apnea, snoring, and failure to gain weight.

Ahrenholtz contacted Dr. Conlon, who recommended surgery to correct the problem. The surgery was scheduled and performed on August 23, 1994. The policy excluded coverage for:

18. Charges for treatment or removal of tonsils or adenoids during the first six months of coverage, except on an Emergency basis.

The policy defined "Emergency" as:

A condition that arises suddenly and unexpectedly and requires immediate treatment to prevent permanent bodily impairment or jeopardy to life.

The surgery was performed within the six month exclusionary period in the policy, and there was no indication that the surgery was an emergency.

The policy also required pre-authorization of medical treatment and surgery and contained the following disclaimer:

THE AUTHORIZATION PROCESS, AS DESCRIBED ABOVE, DOES NOT GUARANTEE THAT BENEFITS WILL BE PAID. PAYMENT OF BENEFITS WILL BE DETERMINED BY THE TERMS AND LIMITS OF THE PLAN, INCLUDING, BUT NOT LIMITED TO, MEDICAL NECESSITY, THE PREEXISTING CONDITIONS LIMITATION AND THE GENERAL EXCLUSIONS PROVISIONS.

Dr. Conlon's nurse obtained the necessary pre-authorization for the surgery on August 1, 1994, by calling ReviewTime, an independent company on contract with Time for the purpose of conducting medical reviews. However, the nurse's conversations with ReviewTime contained reminders that the review for pre-authorization was not a guarantee of coverage and was subject to the terms of the policy. A telegram from Time followed, confirming the conversations between ReviewTime and the nurse. The telegram indicated that the tonsillectomy/adenoidectomy had been recommended for approval as a non-emergency admission by Dr. Conlon. The last paragraph of the telegram contained the following:

ReviewTime recommendations are independent of your specific plan terms and limitations. Plan terms and limitations, including eligibility, pre-existing conditions, exclusions, deductible and co-insurance shall govern. Coverage isn't guaranteed. Direct questions regarding plan terms and limitations to Time Insurance Company Member Services Department.

After the surgery was performed, Ahrenholtz submitted claims related to the surgery to Time. Time rejected each claim and provided notice of that rejection within forty-five days of the date the claim was submitted. Time based its rejection of the claims on the policy's clause excluding tonsillectomies and adenoidectomies within six months of policy coverage.

After several months of contacts between Time and Ahrenholtz, during which time Ahrenholtz continued to pay premiums on the policy, Ahrenholtz was unsuccessful in recovering on the claims for the surgery. Ahrenholtz filed suit in the state district court on May 6, 1996. After briefing and argument on summary judgment motions filed by Time, the district court granted summary judgment. Ahrenholtz timely appealed after post-judgment motions were denied.

## STANDARD OF REVIEW

■ Summary judgment is proper when no genuine issues of material fact exist, and the prevailing party is entitled to judgment as a matter of law. *Eiselein v. K–Mart, Inc.*, 868 P.2d 893, 894 (Wyo.1994). When this Court reviews the propriety of a grant of summary judgment, the record is reviewed in the light most favorable to the party opposing the motion, giving that party all favorable inferences that can be drawn from the facts. *Id.* * * * No deference is accorded to the district court's decisions on issues of law. *Halpern v. Wheeldon*, 890 P.2d 562, 564 (Wyo.1995). *Keller v. Merrick*, 955 P.2d 876, 878 (Wyo. 1998). A material fact is one which, if proved, would have the effect of establishing

or refuting an essential element of the claim or defense asserted by the parties. *Commercial Union Ins. Co. v. Stamper*, 732 P.2d 534, 535 (Wyo.1987) (citations omitted).

## DISCUSSION

### *Breach of Contract and Fraud Claims*

■ When interpreting an insurance contract, we follow general tenets of contract construction. *Squillace v. Wyo. State. Employees' and Officials' Group Ins. Bd.*, 933 P.2d 488, 491 (Wyo.1997). We delineated our rules of insurance contract construction in *St. Paul Fire and Marine Ins. Co. v. Albany County Sch. Dist. No. 1*, 763 P.2d 1255, 1258 (Wyo.1988) (citations omitted):

> The interpretation of a written contract is done by the court as a matter of law. An exception to construing insurance policies as other contracts has been observed by this Court where the language of the policy is ambiguous, in which case the policy must be strictly construed against the insurer. Ambiguity, however, is not generated by a subsequent disagreement between the parties as to the meaning of the policy. Further, the language of an insurance policy will not be "tortured" in order to create an ambiguity.
>
> If the policy language is clear and unambiguous, the rule of strict construction against the insurer does not apply, and the policy must be interpreted in accordance with the ordinary and usual meaning of its terms. The parties to an insurance contract are free to incorporate within the policy whatever lawful terms they desire, and the courts are not at liberty, under the guise of judicial construction, to rewrite the policy.

■ Ahrenholtz asks this Court to overturn its long-standing precedent concerning insurance contract interpretation in favor of what is termed the *Darner*[2] or Restatement approach, which considers the reasonable expectations of the person applying for the insurance. The policy in the case at bar clearly and unambiguously excludes coverage

---

**2.** Referring to *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383,   682 P.2d 388 (Ariz.1984).

"for treatment or removal of tonsils or adenoids during the first six months of coverage, except on an Emergency basis." It is undisputed that the surgery took place during the exclusionary period and that the surgery was not performed "on an Emergency basis." In light of the clear and unambiguous language found in the policy, we decline to consider the approach proffered by Ahrenholtz.

This is not the first time we declined to apply the reasonable expectations theory of recovery in insurance cases. In *Pribble v. State Farm Mutual Auto. Ins. Co.*, 933 P.2d 1108, 1113–14 (Wyo.1997) (citations omitted), we held:

> The Pribbles argue that even if the "household exclusion" clause were clear and unambiguous, the district court should have permitted a jury to consider the Pribbles' "reasonable expectations" in determining the amount of insurance coverage available.
>
> Where insurance contract terms are clear and unambiguous, the "reasonable expectations" of the contracting parties are irrelevant to contract construction issues. A rule of construction that considers the reasonable expectations of the parties is of no assistance where the policy terms are clear and unambiguous. We hold that the contract terms here are clear and unambiguous, and rules of construction such as the doctrine of reasonable expectations are inapplicable.

■ Ahrenholtz cites ReviewTime's pre-approval of the surgery to argue that Time breached its contract and fraudulently approved a surgery that Time knew was excluded under the policy.[3] However, the telegram received by Ahrenholtz and each conversation between ReviewTime and the doctor's office contained warnings that pre-approval did not constitute a guarantee of coverage. Ahrenholtz was advised to check the policy to determine if the surgery was covered by the policy and to call if there were any questions. This Court may not reform an unambiguous contract simply because the insured failed to read the contract and ignored warnings concerning coverage. Given these facts, summary judgment in favor of Time on the breach of contract and fraud claims was appropriate and is affirmed.

### Bad Faith Claim

■ Unable to improve upon the district court's well-reasoned analysis, we repeat it here:

> Plaintiffs next argue that Defendant acted in bad faith, particularly with respect to the investigation, review and handling of their claim.
>
> The duty of good faith and fair dealing is not mandated by the insurance policy itself but is inherent in every contractual relationship.
>
> > It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities. Where in so doing, it fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair dealing.
>
> *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813, 825 (Wyo.1994).
>
> Wyoming has adopted an objective standard of care as a measure of the necessary conduct of insurers. Under this standard, "where a claim [is] not fairly debatable, refusal to pay would be bad faith and, under appropriate facts, could give rise to an action for tortious refusal to honor the claim." [*Id.*] A claim will be "fairly debatable" when a reasonable insurer would have denied or delayed payment of benefits under the facts and circumstances. *McCullo[ugh] v. Golden Rule Ins. Co.*, 789 P.2d 855, 860 (Wyo.1990). In order to establish a claim, therefore, Plaintiffs must show (1) the absence of any reasonable

---

**3.** *See Long v. Great West Life & Annuity Ins.*, 957 P.2d 823 (Wyo.1998) for an in-depth discussion of the history of the utilization review process and the legal ramifications of its use. Ahrenholtz does not argue that Review Time breached any duty to inform them of the contract terms or that *Long* applies in this case.

basis for denying the claim and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Darlow v. Farmers Ins. Exch.*, 822 P.2d 820, 824 (Wyo.1991); *McCullo[ugh]*, 789 P.2d at 860. The Supreme Court has also held that the subsequent payment of a denied or unreasonably delayed claim does not absolve an insurer from compliance with the duty of good faith and fair dealing. While such payment may absolve a claim for breach of contract, the tort of bad faith is independent. *Darlow*, 822 P.2d at 826. While an insured may state claims for breach of contract and breach of the duty of good faith and fair dealing, the insured does not need to prevail on the contract claim to pursue the claim for bad faith. *Shrader*, 882 P.2d at 828.

There is simply no question in this case that the Plaintiffs' claim was "fairly debatable." The record indicates that the surgery in question was specifically excluded from coverage by the clear and unambiguous language of the policy, and Defendant was entitled to rely on that language in denying coverage. The question, therefore, is whether Plaintiffs have shown a material issue of fact as to bad faith in Defendant's adjustment and subsequent reconsideration of the claim.

The record indicates that there were a number of contacts between Plaintiffs, their counsel and Defendant through the mid-part of 1995. In essence, Plaintiffs argued that they had not been aware of the policy exclusion, that they had understood the telegram of August 1, 1994 to approve coverage for the surgery, and/or that the surgery had been an "emergency." In one of his early letters, Mr. Ahrenholtz indicated that if they had known the surgery would not be covered, they would have waited until the exclusionary period expired. Medical records were forwarded to Defendant as well. In each case, and at each level of review, Defendant continued to deny coverage. Its position was essentially that the surgery occurred during the exclusionary period and that it had not been undertaken in emergency circum-

stances as evidenced by Mr. Ahrenholtz's comments, among others.

Plaintiff argues that Defendant did not honestly and fairly re-evaluate the claim. On the other hand, Plaintiffs concede during oral argument that Defendant had no obligation to discuss the matter with them at all. There is nothing in the record to suggest that Defendant deliberately misrepresented policy provisions to defeat coverage; made oppressive demands or imposed burdensome requirements not contained in the policy; retaliated against the insureds in any way; unfairly imposed premium increases; forced Plaintiffs to arbitrate or litigate, knowing that it had no substantial grounds to reject the claim; required Plaintiffs to continue premium payments while it reviewed their claim; or undertook any other action for which insurers have been held liable in first-party bad faith claims. *Hatch v. State Farm Fire & Cas. Co.*, 842 P.2d 1089, 1097 (Wyo. 1992). Indeed, the record indicates that Defendant's contacts with Plaintiffs and their counsel were uniformly professional in nature.

The Court notes that Defendant, having denied the claim of Plaintiffs, was faced with two alternative courses of conduct. It could have simply denied the claim and refused to discuss the matter further, or it could have advised it would consider further information and continued to discuss the matter. One can only speculate what might have happened had Defendant chosen the former alternative, but it is clear that the *only* result which would have satisfied Plaintiffs here was payment of the claim. Taking all the evidence in this matter in a light most favorable to Plaintiffs, the Court concludes there is no material issue of fact with respect to Plaintiffs' bad faith claim, and that Defendant is entitled to summary judgment as a matter of law.

*Attorneys' Fees*

██ Ahrenholtz contends that the district court erred in denying his claim for attorneys' fees and interest pursuant to Wyo. Stat. § 26–15–124. That statute provides:

(a) Claims for benefits under a ... health insurance policy shall be rejected or accepted and paid by the insurer ... within forty-five (45) days after receipt of the proofs of loss and supporting evidence....

\* \* \* \* \* \*

(c) In any actions or proceedings commenced against any insurance company on any insurance policy ..., if it is determined that the company refuses to pay the full amount of a loss covered by the policy and that the refusal is unreasonable or without cause, any court in which judgment is rendered for a claimant may also award a reasonable sum as an attorney's fee and interest at ten percent (10%) per year.

Wyo. Stat. § 26–15–124 (1997).

The district court correctly found that all of Ahrenholtz's claims were initially refused within the statutory forty-five day period. Although review of the claims continued for nearly a year thereafter, it is clear that Time did not violate the requirements of the statute. Additionally, as discussed earlier, Time's refusal to pay was not unreasonable or without cause. We affirm the district court's determination on the attorneys' fee issue as well.

*Continuation of Coverage*

Ahrenholtz relies on one of the exceptions to the general exclusions in the policy and Chapter XII of the Wyoming Department of Insurance Rules and Regulations which refers to "Regulation Governing Replacement of Life Insurance Policies and Annuities," to assert that surgery should have been covered because the surgery would have been covered by the policy previously held by Ahrenholtz with Blue Cross. The exception to the exclusion was not presented to the district court for its determination on the merits of the summary judgment motion, and we decline to review issues which are presented for the first time on appeal. For obvious reasons, the rules and regulations concerning life insurance simply do not apply to this case.

## CONCLUSION

There were no genuine issues of material fact presented to the district court in this matter, and the district court properly granted summary judgment as a matter of law. Therefore, we affirm the district court.