**UNIVERSITY OF WYOMING Through Its Trustees including: Elizabeth A. Kail, W. Perry Dray, Dan Kinnaman, Forrest Kepler, Harry Lee Harris, Peter M. Jorgensen, Geraldine Kirk, Jerry Saunders, M.D., Dave Bonner, Deborah Healy Hammons, David W. "Bud" Updike, and F. Richard Brown, in their official capacities, Appellants (Defendants),**

v.

**Gene M. GRESSLEY, Appellee (Plaintiff).**

**Gene M. Gressley, Appellant (Plaintiff),**

v.

**Helen Deutsch; and University Of Wyoming Through Its Trustees Including: Elizabeth A. Kail, W. Perry Dray, Dan Kinnaman, Forrest Kepler, Harry Lee Harris, Peter M. Jorgensen, Geraldine Kirk, Jerry Saunders, M.D., Dave Bonner, Deborah Healy Hammons, David W. "Bud" Updike, and F. Richard Brown, in their official capacities, Appellees (Defendants).**

Nos. 96–10, 96–9.

Supreme Court of Wyoming.

April 29, 1999.

Ford T. Bussart of Bussart, West, Rossetti, Piaia & Tyler, P.C., Rock Springs, Wyoming, Representing University of Wyoming, et al.

Walter Urbigkit of Frontier Law Center, Cheyenne, Wyoming, Representing Gene M. Gressley.

Before LEHMAN, C.J., and THOMAS,

MACY, GOLDEN,* and TAYLOR,** JJ.

THOMAS, Justice.

In this case, we address questions of issue and claim preclusion ascribable to the efforts of Gene M. Gressley (Gressley) to challenge his discharge as Assistant to the President for the American Heritage Center and as a professor by the University of Wyoming (University). Gressley challenged his discharge by pursuing formal administrative proceedings provided by University regulations and by a civil action in the United States District Court for the District of Wyoming. He did not seek judicial review of the decision of the Board of Trustees of the University to approve his discharge. The state district court dismissed Gressley's claims relating to breach of his employment contract because of the prior resolution of those claims and the issues encompassed in them by the administrative proceedings pursuant to the University regulations and the federal court action. A collateral issue is raised in an appeal by the University from the ruling of the state district court that it is an agency under state administrative law, which must formally adopt rules under the Wyoming Administrative Procedure Act in order to exclude Gressley from access to documents and records in the care, custody and control of the University. We affirm the decision of the state district court in all respects.

In the Brief of Appellants/Defendants, filed on behalf of the University, actually the individual members of the University's Board of Trustees in their official capacities, the issues are stated as:

A. Did the Trial Court err in determining that the University of Wyoming is an "agency" for purposes of rule-making requirements of the Wyoming Administrative Procedure Act, §§ 16–3–101 through 16–3–115, W.S.1977 Republished Edition?

B. Did the Trial Court err in ordering the University of Wyoming to adopt an "APA–Sufficient" rule for access by Plaintiff to the business records of the University's American Heritage Center?

In the Brief of Appellee Gene M. Gressley, his position on the University's appeal is stated as:

A. Whether the University of Wyoming is a state agency, dependent upon legislative control and subject to the Wyoming Public Records Act (Wyo.Stat. § 16–4–101 et seq.) and the rule making requirements of the Wyoming Administrative Procedure Act (Wyo.Stat. § 16–3–101 et seq.) on the restrictions which it imposed on access to the records of the American Heritage Center?

In Gressley's appeal, the issues set forth in the Opening Brief of Appellant/Plaintiff, Gene M. Gressley are:

A. Is the plaintiff's contract claim timely?

B. Are plaintiff's claims barred by his alleged failure to exhaust state remedies?

C. Does collateral estoppel apply?

D. Are plaintiff's claims for relief under 42 U.S.C. § 1983 cognizable?

E. Does res judicata apply?

In the Brief of Appellees/Defendants University of Wyoming, the issues are not stated as such, but the following points are argued in the brief:

1. The doctrine of exhaustion of remedies bars all of appellant/plaintiff's claims for relief

2. The doctrine of collateral estoppel bars all of appellant/plaintiff's claims for relief

3. It is settled federal and Wyoming law that the University of Wyoming and its Trustees in their official capacities are not "persons" subject to suit as defined by 42 U.S.C. § 1983. Appellant/plaintiff's second and fourth claims for relief are therefore not cognizable

4. Appellant/plaintiff's request for injunctive relief failed to show that he would prevail on the merits of his underlying claim, and the federal court's ruling is res judicata

---

* Chief Justice at time of oral argument.

** Retired November 2, 1998.

5. The administrative process utilized by the University of Wyoming to effect appellant/plaintiff's termination is valid

In the Reply Brief of Gene M. Gressley, this analysis of issues is included:

Some road map for direction finding is required to take the Gressley Appeal Brief with its recitation of five issues and argument enumeration to relate the Appellant's brief text to the five non-parallel arguments presented by the University of Wyoming as Appellee.

The motion to dismiss from which this appeal was taken followed adverse Wyo. R.Civ.P. 12(b)(6) complaint dismissal of Plaintiff Gressley's first, second and fourth claim. The broad language utilized by the court in stating the basis for decision cannot be reconciled to the status of the claims in the Complaint nor does Appellee provide any rationalization for the applied scope of the Court's decision except as to one of Appellant's five issues where a directly stated response is made (Claim Four).

Gressley first became a member of the University faculty in 1956 when he was hired as an Archivist and an instructor. In 1959, he was promoted to Assistant Professor, and in 1960, the University granted him tenure. In 1962, he was promoted to Associate Professor. He also served the University as Assistant Director of the library; the Director of the Division of Rare Books and Special Collections; Research Professor of American Studies; and, in 1964, Gressley became a full Professor of the University library. Previously in 1969, he had been appointed Director of American Studies, and later he was made Assistant to the President for the American Heritage Center. In February of 1988, the President of the University reassigned Gressley to the position of Assistant to the President for the American Heritage Center, in addition to his status as a Professor.

In 1991, the President of the University and Gressley disagreed about his new job description and the responsibilities associated with that position. The disagreement caused the President to write two letters to Gressley, one dated June 6, 1991, and a second dated July 30, 1991, in which the President outlined Gressley's duties. The thrust of these letters was to advise Gressley that he no longer would be permitted to independently communicate with donors or patrons in soliciting funds or acquisitions for the American Heritage Center. Gressley was told that he was to function as a University Professor performing appropriate academic research and teaching. The President and the University believe that Gressley continued to communicate with American Heritage Center donors and patrons after his authority to do so had been withdrawn.

On November 10, 1991, the President filed a recommendation for Gressley's dismissal as a tenured professor of the University. Because of his tenure, Gressley's termination had to be for cause, and the dismissal necessarily had to be accomplished pursuant to University Regulation 801 (Regulation 801). This regulation provides for preliminary proceedings designed essentially to bring about an informal resolution between the University and the faculty member. Section 1(a)(3) of Regulation 801 provides:

If at any time during the preliminary proceedings the faculty member requests that the formal proceedings be held, these shall be initiated within one month or the matter shall be dropped.

In a letter dated August 11, 1992, Gressley's attorney requested the University "again to file the charges * * *."[1] On November 10, 1992, the President's formal charges were sent directly to Gressley in a statement of grounds for dismissal, along with a copy of Regulation 801. Enclosed were an initial list of witnesses to be called by the University and a copy of the President's letter to the chair of the faculty sen-

---

1. In his Brief, Gressley contends the formal dismissal proceeding was commenced in April of 1992. There is no date set forth on the General Summary of Charges included in the record. It is clear that the asserted April date is inaccurate because counsel for Gressley in the August 11, 1992, letter stated: "As you know, you supplied us with *informal charges* against Gene in April, 1992. * * * Accordingly, I must ask you again to file the charges as this seems the only way Gene may have to clear his name." (Emphasis added).

ate. The letter to the chair advised that the Ad Hoc Hearing Committee should be appointed pursuant to Regulation 801, if Gressley requested a hearing within twenty days. In a letter dated November 16, 1992 to the chair of the faculty senate, Gressley moved to dismiss the charges as untimely. At the same time, he also requested a public hearing, and he submitted a formal answer to the charges on January 15, 1993.

The hearing Gressley requested was held from January 25 through January 29, 1993, and again during the evenings of February 1 through 10, 1993, before the faculty senate's Ad Hoc Hearing Committee (Committee). The Committee concluded that the University failed to initiate formal proceedings within a month of the request of August 11, 1992, from Gressley's attorney under Regulation 801, Section 1(a)(3) pertaining to "preliminary proceedings * * *." The Committee decided, however, that it was not empowered to dismiss the charges as untimely because its existence and jurisdiction are described, and come into effect, after the preliminary proceedings described in Section 1(a)(3) of Regulation 801 have been exhausted. The Committee found that six charges against Gressley could not be established by clear and convincing evidence, but it concluded that adequate cause existed for his dismissal based upon a "continuance pattern of interference with the administration of the [American Heritage Center] regarding donor matters;" "evidence of neglect of duty by the failure or refusal to account for University property;" and "misrepresentations about a valuable * * * painting belonging to the University." The recommendation by the Committee to dismiss Gressley was unanimous, and was dated March 2, 1993.

According to Regulation 801, Section 1(e)(3), the process for dismissal continues in this way:

> The decisions of the Hearing Committee will either be sustained by the Trustees, or the proceeding returned to the Committee with specific objections. *If returned*, the Committee will then reconsider, taking into account the stated objections and receiving new evidence if necessary. The Trustees will make a final decision only

after study of the Committee's reconsideration.

(Emphasis added.) Oral arguments were presented to the Board of Trustees on May 5, 1993, at an open hearing, and the Board of Trustees designated the record on appeal it considered in arriving at its decision. With some exceptions, the Board of Trustees accepted and adopted the findings and conclusions submitted by the Committee. The Board of Trustees concluded insubordination to the President could be adequate cause, in and of itself, for dismissal of a tenured faculty member. More pertinently, however, the Board of Trustees found that the charges against Gressley were brought in a timely manner because the parties mutually had waived the preliminary proceedings set forth in Regulation 801, Section 1(a). In support of waiver, the following evidence was listed in the Board of Trustees' decision in May 1993:

> 3. That the April 20, 1992, letter from [the President's counsel] to [Gressley's counsel] * * * contained a request that Dr. Gressley notify [the President's counsel] whether he wanted "to utilize the faculty committee process provided by University Regulations", or if he was waiving the *informal process.*
>
> 4. That [Gressley's counsel] advised [the President's counsel] in writing on April 27, 1992 that he was waiving a faculty committee meeting process and "... there is no point in meeting with the president."
> * * *
>
> * * *
>
> 6. That the August 11, 1992 letter from [Gressley's counsel] to [the President's counsel] * * * asking for the matter to proceed to a public forum, had no application to the one month deadline set out in University Regulation 801, 3, Section 1(a)(3) as these proceedings had already been waived.

(Emphasis added.) The Board of Trustees ruled that after the preliminary proceedings were waived by the faculty member, the University was not bound by the one-month requirement in that section, and it was "not intended as an absolute bar to dismissal proceedings."

The Board of Trustees found that adequate cause existed to dismiss Gressley because of insubordination to the President. In so doing, the Board of Trustees concluded to disregard testimony elicited from a witness who had been accused of defamation by Gressley. The Board of Trustees did, however, unanimously sustain the Committee's decision to dismiss together with the recommendations of the President on the conditions of dismissal. Since the Board of Trustees did not overrule the Committee's decision, but sustained it instead, the matter was not returned to the Committee for any further deliberations. Gressley did not seek judicial review of the decision of the Board of Trustees.

Gressley's next effort to challenge his discharge was to file a claim in accordance with the Wyoming Governmental Claims Act, which he did on July 2, 1993. He then filed a civil action in the United States District Court for the District of Wyoming. *Gressley v. Deutsch*, 890 F.Supp. 1474 (D.Wyo.1994). In that action, his amended complaint advanced six claims for relief:

(1) breach of contract against the Trustees of the University of Wyoming; (2) a claim against all defendants pursuant to 42 U.S.C. § 1983 for violation of due process; (3) a claim against [the President of the University] and the Trustees, pursuant to 42 U.S.C. § 1983, for violation of his first amendment rights to freedom of speech and association; (4) a defamation claim against [an American Heritage Center donor] and [the President of the University] for defamation; (5) a claim for injunctive and declaratory relief against [the President of the University] and the Trustees; and (6) a claim for punitive damages against [the President of the University] and [the American Heritage Center donor].

*Gressley*, 890 F.Supp. at 1482. Gressley's complaint was met by motions to dismiss on behalf of all of the defendants. *Id.* The United States District Court dismissed all six claims with prejudice. *Id.* at 1504. It ruled that all of the claims brought pursuant to 42 U.S.C. § 1983 were precluded and that the pendant state claims, breach of contract and defamation need not be addressed because the court was without jurisdiction to entertain them. *Gressley*, 890 F.Supp. at 1504. The rationale for that decision was that Gressley's contract claim against the Board of Trustees is an action against the State of Wyoming within the meaning of Wyo. Stat. Ann. § 1–35–101 (Michie Cum.Supp.1994). *Gressley*, 890 F.Supp. at 1487. For that reason, it had to be pursued in accordance with the Wyoming Governmental Claims Act. Wyo. Stat. Ann. §§ 1–39–101 to 1–39–120 (Michie Cum.Supp.1994). *Gressley*, 890 F.Supp. at 1487. The federal court dismissed the contract claim because " '[o]riginal and exclusive jurisdiction *for any claim under this act* shall be in the district courts of Wyoming. . . .' " *Gressley*, 890 F.Supp. at 1487 (*quoting* Wyo. Stat. Ann. § 1–39–117(a)) (emphasis in original).

In addition, the United States District Court held that the University was immune pursuant to the Eleventh Amendment to the Constitution of the United States,[2] and the purchase of liability insurance by the University did not waive that federal immunity. *Gressley*, 890 F.Supp. at 1488. The federal court also ruled, that even if it acknowledged jurisdiction over prospective injunctive relief under the Eleventh Amendment, Gressley failed to show a substantial likelihood that he would prevail on the merits with respect to any right of reinstatement. *Gressley*, 890 F.Supp. at 1489.

The federal court also held that the President and the Board of Trustees in their individual capacities were entitled to the defense of qualified immunity because termination of Gressley came within the ambit of discretionary function. *Id.* at 1492. In addition, the federal court ruled that Gressley had failed to plead sufficient facts to demon-

---

**2.** The Eleventh Amendment to the Constitution of the United States provides that "[t]he Judicial power to the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." This language has been interpreted to foreclose suits by citizens residing in a state from federal court actions against that state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

strate that the President and the Board of Trustees violated any clearly established law, or facts sufficient to establish bias on the part of the Board of Trustees. *Id.* at 1496. Further, the federal court held that Gressley could not demonstrate any prejudice because formal proceedings were instituted by the President instead of the appropriate administrative officer appointed by the President, and, even assuming the charges against Gressley were not timely brought, that would not suffice to permit Gressley to overcome the defense of qualified immunity. *Id.* at 1498. As a final matter, the federal court ruled that the President's action of prohibiting Gressley from sending a form letter to some three hundred donors did not constitute a violation of his right of free speech or his right to freedom of association because it was an expression of Gressley's disgruntlement over his employment status rather than a letter touching "upon a matter of public concern." *Id.* at 1502. The federal court ruled that the University's interest in protecting its relationship with patrons and donors of the American Heritage Center outweighed any interest of Gressley in communicating his job dissatisfaction to those same individuals. *Id.* at 1503.

The federal court captured the essence of its ruling when it said:

> To summarize: this Court lacks jurisdiction over plaintiff's 42 U.S.C. § 1983 claims against [the President of the University] and the University of Wyoming Board of Trustees, in their official capacities; Plaintiff has failed to plead sufficient facts to support a conspiracy claim against Defendant, [donor]; the Board of Trustees are absolutely immune from any suit for damages pursuant to 42 U.S.C. § 1983; and Plaintiff's amended complaint, alone, is insufficient to meet his burden of showing both facts and law to establish that defendants are not entitled to qualified immunity with respect to his 42 U.S.C. § 1983 claims. Finally, in light of this Court's determination that all of Plaintiff's 42 U.S.C. § 1983 claims are precluded, Plaintiff's pendant state claims, breach of contract and defamation, need not be ad-

dressed since this Court lacks jurisdiction to entertain them. *See,* 28 U.S.C. § 1441. *Gressley,* 890 F.Supp. at 1504.

On November 1, 1994, Gressley filed an action in the state district court naming the same defendants as those involved in the federal court action. He asserted six claims for relief:

1. Breach of contract against the University.

2. 42 U.S.C. § 1983 violation of Gressley's First Amendment rights to freedom of speech versus the University.

3. Defamation versus the donor to the American Heritage Center.

4. Injunctive and declarative relief versus the Board of Trustees.

5. Punitive damages versus the donor to the American Heritage Center.

6. Public Records Act versus the Board of Trustees.

Specifically, the sixth claim for relief, relating to the Public Records Act, stated:

> The Trustees have refused to allow Plaintiff access to the files of the American Heritage Center to write an accurate history of the Center. Their actions in so doing violate the Wyoming Public Records Act.

The University filed a motion to dismiss Gressley's first, second, and fourth claims for relief, and for partial summary judgment on his sixth claim for relief. The motion to dismiss asserted the statute of limitations; failure to exhaust administrative remedies; and collateral estoppel or res judicata as a bar to Gressley's claims for relief. Gressley filed motions on several dates in which he opposed the dismissal of his action. The last motion was filed February 21, 1995, and it was entitled Plaintiff's Affidavit in Opposition to Defendant University of Wyoming's Motion for Summary Judgment on the Wyoming Public Records Act. Briefs were filed by both sides, and the state court heard oral arguments on June 30, 1995.

In the district court's decision letter filed on September 18, 1995, the district court advised that it would dismiss all of Gressley's claims, except the district court "granted

partial summary judgment on his sixth claim for relief both on substantive and procedural grounds." The district court determined that any rule or regulation restricting Gressley's access to the resources in the American Heritage Center "must comply with the Wyoming Public Records law and must be promulgated in compliance with the Administrative Procedure Act." The appeal to this court was taken from the order entered consistently with the district court's decision letter.

When we are called upon to review a summary judgment, our review is *de novo* upon the same record materials that were presented to the trial court. We afford no special deference to the ruling of the trial court on the motion for summary judgment. *E.g., Ahrenholtz v. Time Ins. Co.,* 968 P.2d 946, 949 (Wyo.1998); *40 North Corp. v. Morrell,* 964 P.2d 423, 426 (Wyo.1998); *Diamond Surface, Inc. v. Cleveland,* 963 P.2d 996, 1000 (Wyo.1998); *Garcia v. UniWyo Federal Credit Union,* 920 P.2d 642, 645 (Wyo.1996); *Reno Livestock Corp. v. Sun Oil Co. (Delaware),* 638 P.2d 147, 150 (Wyo.1981); *Laird v. Laird,* 597 P.2d 463, 466 (Wyo.1979). The position of the party opposing the motion for summary judgment is given all favorable inferences that fairly may be drawn from the record. *E.g., Garcia,* 920 P.2d at 645; *Tidwell v. HOM, Inc.,* 896 P.2d 1322, 1325 (Wyo.1995); *Adkins v. Lawson,* 892 P.2d 128, 130 (Wyo.1995). If the decision of the district court is correct on the law we affirm, but if it is not correct we must do what is necessary to correct it. *E.g., Collier v. Hilltop Nat. Bank,* 920 P.2d 1241, 1242 (Wyo.1996); *Trefren v. Lewis,* 852 P.2d 323, 325 (Wyo.1993); *Parker Land and Cattle Co. v. Wyoming Game and Fish Com'n,* 845 P.2d 1040, 1042 (Wyo.1993).

■ The parties to this case do not debate any factual issues, and it is apparent that there is no genuine issue of material fact. Under those circumstances, if the prevailing party is entitled to judgment as a matter of law, we will affirm the lower court's order granting summary judgment. *American Nat. Bank of Cheyenne, Wyo. v. Miller,* 899 P.2d 1337, 1340 (Wyo.1995); *Makinen v. PM P.C.,* 893 P.2d 1149, 1153 (Wyo.1995); *Sandstrom v. Sandstrom,* 884 P.2d 968, 971 (Wyo.

1994). We can affirm an order granting summary judgment on any legal grounds appearing in the record. *Rue v. Carter,* 919 P.2d 633, 634 (Wyo.1996); *State ex rel. Bayou Liquors, Inc. v. City of Casper,* 906 P.2d 1046, 1048 (Wyo.1995).

Gressley contends in his brief and argument that the statute of limitations found in the Wyoming Governmental Claims Act; res judicata; collateral estoppel; or a failure to exhaust his administrative remedies do not stand as a bar to his action in this case. The district court decided otherwise, ruling that Gressley's breach of contract action against the University should be dismissed on the basis of all of these theories of defense.

■ We have held that the related doctrines of res judicata and collateral estoppel apply to final determinations by administrative agencies. *Slavens v. Board of County Com'rs for Uinta County,* 854 P.2d 683, 685 (Wyo.1993). In that case, we applied collateral estoppel, sometimes described as issue preclusion, in reviewing the final decision of the board of county commissioners because such agencies deal primarily with issues rather than with claims that can be pleaded in an action in court. The doctrine of issue preclusion prevents the relitigation of issues actually and necessarily decided previously in an action between the same parties. *Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.,* 896 P.2d 769, 772 (Wyo.1995). Collateral estoppel forecloses relitigation when the issue presented is identical to one determined in a prior proceeding; when the prior proceeding produced a decision on the merits of the issue; when the party against whom issue preclusion is asserted was a party, or in privity with the party, in the prior proceeding; and when the party against whom issue preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Kahrs v. Board of Trustees for Platte County School Dist. No. 1,* 901 P.2d 404, 406 (Wyo.1995). *See Slavens,* 854 P.2d at 686.

■ As was true in *Kahrs,* Gressley can recover under his breach of contract claim only if it is determined that his termination by the University was unlawful. *Kahrs,* 901

P.2d at 406; *Slavens,* 854 P.2d at 686. As a tenured employee, Gressley's termination had to be a termination for cause, and this is the issue that directly was determined first by the Committee, and again by the Board of Trustees at the next level of the proceedings required under Regulation 801. Gressley's situation is very similar to that of Kahrs.

The issues presented to the Board of Trustees in the board hearing and to the court in this lawsuit are identical. The Board of Trustees did make a final determination on the merits in their unanimous finding that good cause existed to terminate Gressley's employment with the University. Gressley did not seek judicial review of the adverse decision against him. The Board of Trustees and Gressley, the parties in the administrative hearing, are the same parties in this lawsuit. Gressley was permitted to present all of his evidence and exhibits in the hearing, and he thus was afforded a full and fair opportunity to litigate the propriety of his dismissal. The federal court ruled that there were not sufficient facts to establish any bias on the part of the Board of Trustees, and that Gressley's rights to due process had not been violated in any respect. Gressley complains that he has not had an opportunity to be heard, but he had that opportunity before the Board of Trustees, which had full authority to hear the case and to terminate him. If Gressley's complaint is that he did not have a judicial hearing as compared to an administrative hearing, he would have been afforded the judicial hearing had he sought review in the state district court. He did not, and it follows that the district court appropriately applied collateral estoppel to Gressley's breach of contract claim, and properly precluded Gressley from relitigating that issue in the district court.

■ As did Kahrs, Gressley relies upon a right to bring an independent action in the district court under W.R.A.P. 12.12, which provides:

The relief, review, or redress available in suits for injunction against agency action or enforcement, in actions for recovery of money, in actions for a declaratory judgment based on agency action or inaction, in actions seeking any common law writ to compel, review or restrain agency action shall be available by independent action notwithstanding any petition for review.

We rejected this argument when we stated in *Slavens,* 854 P.2d at 687, "W.R.A.P. 12.12 is not an exception to the doctrine of collateral estoppel." We reiterated that concept in *Kahrs,* 901 P.2d at 408. As in the prior cases, in which we invoked collateral estoppel, we hold that the issue of cause for termination; the foundation for entitlement to injunctive relief; the identity of parties; and the opportunity for a full and fair hearing on the question of the lawfulness of the discharge all have been afforded in the administrative proceeding. We hold that Gressley's contract claim is foreclosed based upon issue preclusion. As in *Kahrs,* since Gressley was precluded by the doctrine of collateral estoppel from maintaining the state district court action, there is no need to address the question of whether the Wyoming Governmental Claims Act bars the action for breach of contract. *See Kahrs,* 901 P.2d at 408.

Gressley asserts that his second claim for relief, which he brought under 42 U.S.C. § 1983 for violation of his First Amendment right to freedom of speech, is not foreclosed because the federal court concluded it lacked jurisdiction over his claims brought there under 42 U.S.C. § 1983. In making this argument, Gressley does not credit the scope of the federal court decision. The federal court ruled that it lacked jurisdiction over the President and the Board of Trustees in their official capacity, but it ruled on the merits that the Board of Trustees enjoyed immunity from a suit for damages under 42 U.S.C. § 1983, and that the complaint was not sufficient to meet Gressley's burden of showing facts and law to establish that the defendants were not entitled to qualified immunity with respect to those claims. *Gressley,* 890 F.Supp. at 1504. It was from that premise that the federal court determined it did not have jurisdiction to entertain the pendant claims of breach of contract and defamation. *Id.*

■ The lack of jurisdiction over the 42 U.S.C. § 1983 claims against the President and the Board of Trustees in their official

capacities was premised upon the Eleventh Amendment to the Constitution of the United States. Even so, the 42 U.S.C. § 1983 claims in the state district court were subject to dismissal because, in the proper exercise of its jurisdiction over the President, as an individual, and the individual members of the Board of Trustees, the federal court did adjudicate the issues of absolute immunity and qualified immunity. *Gressley,* 890 F.Supp. at 1489–98. In light of that determination, there is no set of facts pursuant to which the President and the Board of Trustees, in their official capacities, are not entitled to qualified immunity in the state district court. The issues are identical whether the President and the Board of Trustees are sued as individuals or in their official capacities. The federal court's determination of these issues results in collateral estoppel with respect to Gressley's attempt to present them again in the state district court. In its ruling, the district court dismissed the second claim for relief by applying the doctrine of res judicata. The district court stated:

> Although the state court may exercise jurisdiction over a 42 U.S.C. § 1983 claim, the United States District Court, District of Wyoming, has exercised jurisdiction over many of the claims raised in plaintiff's claims in this action and *all such claims are barred as a matter of comity and "claims preclusion,"* excepting as the claim involves the portion of plaintiff's sixth claim for relief that relates to the restriction of plaintiff's access to the American Heritage Center's records and files.

(Emphasis added.)

■ We perceive this ruling by the district court to be accurate, and we hold that the federal court effectively disposed of Gressley's claims of violation of his right to freedom of speech, his right to association, his right to procedural due process, his right to substantive due process, and any other claims asserted pursuant to 42 U.S.C. § 1983. The federal court had subject matter jurisdiction to resolve those claims, and we affirm the holding of the district court that "all such claims are barred * * *." They were asserted and finally decided in the federal court. The crux of res judicata is

that a claim once decided is finally decided, and in this case, the doctrine applies to bar all of Gressley's claims pursuant to 42 U.S.C. § 1983.

The only claim presented in the state district court that was not resolved is Gressley's attack upon "the legality of rules instituted by the University to limit or regulate [Gressley's] access to library resources of the American Heritage Center." The position of the University as to this question is untenable. Our holding that the issue of unlawful discharge is foreclosed as a matter of collateral estoppel assumes the applicability of Wyo. Stat. Ann. § 16–3–114 (Michie 1997), which provides in pertinent part:

> (a) Subject to the requirement that administrative remedies be exhausted and in the absence of any statutory or common-law provision precluding or limiting judicial review, any person aggrieved or adversely affected in fact by a final decision of an agency in a contested case, or by other agency action or inaction, or any person affected in fact by a rule adopted by an agency, is entitled to judicial review in the district court for the county in which the administrative action or inaction was taken, or in which any real property affected by the administrative action or inaction is located, or if no real property is involved, in the district court for the county in which the party aggrieved or adversely affected by the administrative action or inaction resides or has its principal place of business. The procedure to be followed in the proceeding before the district court shall be in accordance with rules heretofore or hereinafter adopted by the Wyoming supreme court.

In order to have the benefit of the holding that the breach of contract claim is barred, the University must be an agency. The University appears to be content to be an agency for that purpose.

■ It argues, however, that while it is subject to the Wyoming Public Records Act, it is not an agency for purposes of applying the statutory requirements under the Wyoming Administrative Procedure Act. We cannot support this claim of a dual institutional personality. In *Awe v. University of Wyo-*

*ming,* 534 P.2d 97 (Wyo.1975), we dealt with the question of whether an action against the Board of Trustees of the University of Wyoming was an action against the state. The agency status of the University was not directly before us, but we did remark:

> The plaintiffs seem to find some magic in the use by the legislature of the term "body corporate" in referring to the board of trustees of the University of Wyoming (§ 21–352, W.S.1957). An examination, however, of the duties of the board of trustees fails to distinguish it from the highway commission or the game and fish commission or the state board of charities and reform or the numerous other commissions and boards charged with the management and operation of a multitude of state agencies.

*Awe,* 534 P.2d at 101.

The Game and Fish Commission and the Highway Commission are agencies that are required to promulgate rules and regulations pursuant to the Wyoming Administrative Procedure Act. We perceive no justification to treat the University of Wyoming any differently, especially in light of Wyo. Stat. Ann. § 16–3–101(b)(i) (Michie Cum.Supp.1996), providing:

> "Agency" means any authority, bureau, *board,* commission, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, *except the governing body of a city or town, the state legislature and the judiciary[.]*

(Emphasis added.) The exceptions from the reach of the statute are defined clearly, and we can only conclude that had there been a legislative intent to also except the University of Wyoming, it would have been included in the exceptions.

We affirm the Amended Order Granting Defendants' Motion to Dismiss Plaintiff's First, Second and Fourth Claims for Relief in all respects, and we also affirm the ruling of the district court that the University of Wyoming is a "state agency" for purposes of the rule-making requirements of the Wyoming Administrative Procedure Act.