2010 WY 89

**Gail L. HARPER, Appellant (Plaintiff),**

v.

**FIDELITY AND GUARANTY LIFE INSURANCE COMPANY, Appellee (Defendant).**

No. S–09–0119.

Supreme Court of Wyoming.

June 29, 2010.

Representing Appellant: Stephen R. Winship of Winship & Winship, P.C., Casper, Wyoming.

Representing Appellee: Julie Nye Tiedeken of McKellar, Tiedeken & Scoggins, LLC, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]  Joseph Harper, the husband of Appellant Gail Harper, bought a life insurance policy and died within two months of doing so.  Fidelity and Guaranty Life Insurance Company refused to pay the claim because they insisted that Mr. Harper "misrepresented/omitted" the state of his health in the claim application.  Mrs. Harper filed suit, the district court granted summary judgment in favor of Fidelity, and this appeal followed.

## ISSUES

[¶ 2]  Harper lists the issues as follows:

1.  Is the determination of what is a "material" omission or misstatement in a life insurance application an issue of fact to be determined by the jury?

2. Were there genuine issues of material fact as to whether there were any material misrepresentations or omissions in [Mr. Harper's] life insurance application?

3. When [Mr. Harper's] insurance application disclosed the actual health conditions that were later determined to be the cause of his death, was it error to grant summary judgment based on allegations of his material omissions or misrepresentations as to other health conditions.

4. Whether in granting [Fidelity's] Motion for Summary Judgment, did the District Court accord to [Gail] the benefit of all reasonable inferences that could be fairly drawn from the record?

5. When [Fidelity] had notice of material medical information that differed from the information in [Joseph's] life insurance application, was it a genuine issue of material fact as to whether [Fidelity] could reasonably rely solely on the life insurance application information in issuing the life insurance policy to [Mr. Harper]?

6. Whether the application's reference to the records of [Mr. Harper's] treating physician and the authorization provided to [Fidelity] to gather [Mr. Harper's] medical records created a disputed factual issue as to whether [Fidelity] needed to review more than [Mr. Harper's] life insurance application as part of the underwriting decision?

7. Did [Fidelity] engage in "post-claim" underwriting?

8. Where the life insurance contract provisions at issue have been made ambiguous by the life insurance application's uncertainties, was summary judgment appropriate?

Fidelity recites the issues this way:

1. Did the District Court properly conclude that there was no genuine issue of material fact on whether [Fidelity] properly rescinded [Mr. Harper's] policy of insurance pursuant to W.S. § 26–15–109?

2. Did the trial court properly conclude that [Fidelity], under the facts of this case, did not have a duty to investigate [Mr. Harper's] medical condition?

3. Did the trial court properly grant Summary Judgment on [Mrs. Harper's] claim that [Fidelity] was estopped to deny coverage under the policy?

4. Did the trial court properly grant Summary Judgment on [Mrs. Harper's] claim of the breach of good faith and fair dealing?

5. Did the trial court properly grant Summary Judgment on [Mrs. Harper's] claim that she should recover the benefits of the policy under the reasonable expectations doctrine?

## FACTS

[¶ 3] Joseph Harper (Mr. Harper) applied for a $63,000.00 life insurance policy with Fidelity & Guaranty Life Insurance Company (Fidelity) on February 10, 2006, and named his wife Gail (Mrs. Harper) as the beneficiary.

[¶ 4] Fidelity's application for insurance required that Mr. Harper answer questions about his health and health history. He indicated that he was born on January 19, 1955, that he was 5'11" tall, and that he weighed 275 pounds. He represented on his application that he had never sought or received treatment, advice, or counseling for the use of alcohol. He listed that he was diagnosed with both high blood pressure and high cholesterol in 1997, and the application noted that he was currently taking medication for both conditions. He responded "no" to whether he had been treated for or diagnosed with "[a]ny circulatory disease, stroke, TIA, aneurysm, or any other disorder of the veins or arteries," "[h]epatitis, gastritis, colitis, or any disease or disorder of the liver, stomach, pancreas, or intestines." Mr. Harper reported that he had surgery on his knee in "1995 or 1996," and that he had "[b]lood tests and an electrocardiogram for complaint of migraine & headaches—complete recovery from symptoms in 1996."

[¶ 5] After Mr. Harper signed and submitted the application to Fidelity for approval or denial, Lisa Jones, a senior underwriter

for Mid–America Agency Services (MAAS)[1], reviewed the application. The type of life insurance applied for by Mr. Harper was a "simplified underwritten product," where the underwriter reviews and relies upon only the information and medical history provided by the application plus a single report from the Medical Information Bureau (MIB).

[¶ 6]   Overall, the information contained in the MIB was consistent with Mr. Harper's application information, but two pieces of information from the MIB were of note to Ms. Jones. First, based upon the MIB information existing for Mr. Harper, Fidelity knew that he had applied for another insurance product, the type and results of which were unknown. Second, Ms. Jones noted a weight discrepancy—the MIB recorded Mr. Harper's weight to be 305 pounds within sixty days prior to January 9, 2006; Mr. Harper's February application represented his weight to be 275 pounds. Under Fidelity's underwriting guidelines, an individual the height of Mr. Harper (5'11") must be less than 301 pounds for an application to be accepted. Ms. Jones concluded that given the time between the date of the application and the date of her review, she assumed Mr. Harper had lost enough weight (four pounds) to fit within the guidelines, so she gave him the benefit of the doubt and "let it go."

[¶ 7]   Ms. Jones made several other observations about Mr. Harper's application that she ultimately let go as well. She noted that Mr. Harper had been treated for depression in 1996 but had a "complete recovery;" thus she was not concerned about his depression being severe, which would have resulted in denial of the application. Also, she observed his diagnosis for high blood pressure and high cholesterol, but considered both to be under control based on the fact that he was taking medication for both conditions. Based on all of Mr. Harper's answers, Ms. Jones recommended his application for life insurance be approved.

[¶ 8]   On March 1, 2006, Fidelity issued a life insurance policy to Mr. Harper. On April 20, 2006, Mr. Harper died from sudden cardiac arrest, hypertensive cardiovascular disease, and hypertriglyceridemia, just 50 days after the policy was issued.

[¶ 9]   In light of Mr. Harper's death, Fidelity conducted an investigation within the insurance company's "two-year contestability period," during which Mr. Harper's medical records were reviewed. Fidelity identified various medical conditions of Mr. Harper's that had not been disclosed on his application for life insurance but that, in Fidelity's estimation, were material to the issuance of the policy. First, Mr. Harper had been treated for a "probable transient ischemic attack (TIA)" in May of 2000. On his application, however, he denied ever being treated for a TIA. Also, Mr. Harper's medical records reflected a history of alcohol abuse, including advice from his physician to quit drinking because his liver tests were abnormal—he denied any such condition on his insurance application. In March of 2000, Mr. Harper was also hospitalized for heart fluttering and chest pains, which he did not disclose. Mr. Harper's weight discrepancies also came up. Although he listed himself at 275 pounds on his application, and although his MIB report listed him to be 306 pounds, Mr. Harper's certificate of death recorded Mr. Harper as morbidly obese at 350 pounds.

[¶ 10]   Mrs. Harper submitted a claim for benefits, but her claim was denied by Fidelity based on Wyo. Stat. Ann. § 26–15–124. Along with its denial, Fidelity refunded the premiums paid on the policy to Mrs. Harper, who nevertheless filed suit in district court, asserting four claims for relief: breach of contract, reasonable expectations, equitable and/or promissory estoppel, and breach of the implied covenant of good faith and fair dealing. She also sought an award of punitive damages, attorney's fees, and costs. The district court granted Fidelity's motion for summary judgment, and this appeal followed.

**STANDARD OF REVIEW**

[¶ 11]   We recently reiterated our standard of review for summary judgment motions in *Singer v. New Tech,* 2010 WY 31, ¶ 8, 227 P.3d 305, 308–09 (Wyo.2010):

---

1. Fidelity contracted with MAAS for its under-    writing services.

We evaluate the propriety of a summary judgment by employing the same standards and using the same materials as the district court. *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006). Thus, our review is plenary. *Birt v. Wells Fargo Home Mortg., Inc.*, 2003 WY 102, ¶ 7, 75 P.3d 640, 647 (Wyo. 2003).

Wyo. R. Civ. P. 56 governs summary judgments. A summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. W.R.C.P. 56(c). When reviewing a summary judgment, we consider the record in the perspective most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may be fairly drawn from the record. We review questions of law *de novo* without giving any deference to the district court's determinations.

*Loredo v. Solvay Am., Inc.*, 2009 WY 93, ¶ 10, 212 P.3d 614, 618 (Wyo.2009), quoting *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 11, 123 P.3d 579, 586 (Wyo.2005), quoting *Baker v. Ayres and Baker Pole and Post, Inc.*, 2005 WY 97, ¶ 14, 117 P.3d 1234, 1239 (Wyo.2005).

A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or a defense that the parties have asserted." *Christensen v. Carbon County*, 2004 WY 135, ¶ 8, 100 P.3d 411, 413 (Wyo.2004) (quoting *Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, ¶ 9, 39 P.3d 1051, 1055 (Wyo.2002)). The party requesting a summary judgment bears the initial burden of establishing a prima facie case for summary judgment. If he carries his burden, 'the party who is opposing the motion for summary judgment must present specific facts to demonstrate that a genuine issue of material fact exists.' *Id.* We have explained the duties of the party opposing a motion for summary judgment as follows:

After a movant has adequately supported the motion for summary judgment, the opposing party must come forward with competent evidence admissible at trial showing there are genuine issues of material fact. The opposing party must affirmatively set forth material, specific facts in opposition to a motion for summary judgment, and cannot rely only upon allegations and pleadings . . ., and conclusory statements or mere opinions are insufficient to satisfy the opposing party's burden.

The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact. *Cook*, ¶ 12, 126 P.3d at 890, quoting *Jones v. Schabron*, 2005 WY 65, ¶¶ 9–11, 113 P.3d 34, 37 (Wyo.2005).

*Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶¶ 8–9, 148 P.3d 8, 12–13 (Wyo. 2006).

*Loredo*, ¶ 10, 212 P.3d at 618.

## DISCUSSION

### Issue I—Materiality

[¶ 12] Mrs. Harper contests the district court's finding that there was no issue of material fact as to whether Fidelity properly rescinded Mr. Harper's insurance policy pursuant to Wyo. Stat. Ann. § 26–15–109. Mrs. Harper argues that a representation or omission in an insurance application is " 'material' if knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the character of the risk or setting the premium." Thus, argues Mrs. Harper, this is a question of fact for the jury to decide.

[¶ 13] Wyo. Stat. Ann. § 26–15–109 (LexisNexis 2009) sets forth when a "misrepresentation, omission, concealment of facts or

incorrect statement" will prevent recovery under a life insurance policy and states in relevant part:

> (a) Any statements and descriptions in any application for an insurance policy ... by or in behalf of the insured ... are representations ... Misrepresentations, omissions, concealment of facts and incorrect statements do not prevent a recovery under the policy or contract unless either:
>
> (i) Fraudulent; or
>
> (ii) Material either to the acceptance of the risk, or to the hazard the insurer assumes; or
>
> (iii) The insurer in good faith, if it knew the true facts as required by the application for the policy ... would not have:
>
> (A) Issued the policy or contract;
>
> (B) Issued it at the same premium rate[,]

[¶ 14] One year before § 26–15–109 was adopted, this Court considered a case similar to the instant one. In *All American Life & Casualty Co. v. Krenzelok*, 409 P.2d 766 (Wyo.1966), Mary Krenzelok, a foreign woman who could neither read nor write, applied for life insurance. Her son actually completed the application and Krenzelok signed it. The policy was issued, and Krenzelok died from a cerebral brain hemorrhage approximately one year after its issuance. It was then discovered that Krenzelok had failed to disclose a hospitalization for arteriosclerotic heart disease and congestive heart failure. This Court stated on appeal:

> There are numerous cases which hold a concealment or failure to disclose periods of past hospitalization and medical treatment will invalidate a policy, regardless of whether applicant had a fraudulent intent to deceive. ... A fraudulent intent on the part of the insured is not a requisite of concealment. Consequently, concealment of facts material to the risk will avoid the policy even though the concealment was

the result of inadvertence or mistake and was entirely without fraudulent intent.

*Id.*, 409 P.2d at 768.

[¶ 15] More recently, the Wyoming Federal District Court interpreted § 26–15–109, and discussed *Krenzelok*.

> *Krenzelok*, a case decided one year before the Wyoming legislature adopted § 26–15–109, and which influenced the drafting of that statute, therefore stands for the proposition that if the insurer can show that the concealment was "material" to the insurance risk at issue, then any concealment by the insured, even if made in good faith, will justify rescission of the coverage by the insurer. Other courts have reached the same conclusion in interpreting similar state statutes. *Bageanis*, 783 F.Supp. at 1145 ("A good faith mistake does not excuse a material misrepresentation"); *Massachusetts Mut. Life Ins. Co. v. Nicholson*, 775 F.Supp. 954, 959 (N.D.Miss.1991) ("If the misstatement is material, it can make no difference as to whether or not it was made in good faith") (citations omitted). Stated another way, proof of intent is not necessary to rescind under *Krenzelok* as long as the insurer can prove that the concealment was "material" to the insurance risk involved. While the rule enunciated in *Krenzelok* may be a considered a harsh one, it is nonetheless the prevailing law of Wyoming which this Court must follow and apply in this case.

*White v. Continental Gen. Ins. Co.*, 831 F.Supp. 1545, 1553 (D.Wyo.1993).

[¶ 16] "Materiality" is determined by asking whether reasonably careful and intelligent persons would have regarded the omitted facts as substantially increasing the chances of the events insured against so as to cause a rejection of the application or different conditions, such as higher premiums. *White*, 831 F.Supp. at 1554. The materiality of a misrepresentation may be established by the underwriter's testimony or testimony of the insurer's employees. *Bageanis v. American Bankers Life Assurance Co.*, 783 F.Supp. 1141, 1145 (N.D.Ill.1992). Furthermore, a good faith mistake does not excuse a material misrepresentation.[2] *Id.* The fact

---

2. Mrs. Harper takes issue that her husband misrepresented his health on his application. Rather, Mrs. Harper blames her husband's erroneous

answers on his "lack of sufficient knowledge" as to the health conditions being inquired about, and Mr. Harper himself being a "poorly educat-

that a potential insured does not die from the withheld ailment does not affect the materiality of the misrepresentation. *Hatch v. Woodmen Accident & Life Co.*, 88 Ill.App.3d 36, 42 Ill.Dec. 925, 409 N.E.2d 540, 543 (1980). Finally, although materiality is usually a question of fact, summary judgment is appropriate where the misrepresentation "is of such a nature that there can be no dispute as to its materiality." *Commercial Life Ins. Co. v. Lone Star Life Ins. Co.*, 727 F.Supp. 467, 470 (N.D.Ill.1989).

[¶ 17] Mr. Harper's application contained omissions and misrepresentations. He did not accurately respond to several of the questions, including the question about his weight; the question regarding whether he had treatment for/was diagnosed with "hepatitis, gastritis, colitis, or any disease or disorder of the liver ..." (he underwent a biopsy and ultrasound of his liver and was treated for a liver disease/disorder); and the question regarding diagnosis or treatment of "stroke, TIA, aneurysm..." (he had been treated for a TIA and he had been diagnosed as suffering from a stroke). Under Fidelity's guidelines, and according to the underwriter, Mr. Harper's application would have been denied had this information been known. Dennis Gunderson, the chief underwriter in Mr. Harper's case, testified that the policy would not have been issued if the true facts had been presented. Mrs. Harper's own witness, John Terry, testified that Mr. Harper's failure to disclose his history was material.

[¶ 18] The omissions/misrepresentations on Mr. Harper's application were material. Mr. Harper did not disclose several health conditions on his application. Whether or not he meant to omit them is not at issue. Had he included them, it is clear that Fidelity would not have issued the certificate of insurance. The underwriter testified that if Mr. Harper had correctly stated that he had a liver function test with an abnormal result, or that he had a liver biopsy, or had he disclosed his hospitalizations for heart problems in March 2000, and/or the May 2000 treatment for a probable TIA, his application would have been rejected. This is a case of even though there are material misrepresentations, which usually raises a question of fact, summary judgment was appropriate here because the misrepresentations are of such a nature that there is no dispute as to this materiality. Thus, there being no genuine issues of material fact, Fidelity was entitled to summary judgment, and the district court is affirmed.

## Issue II—Duty to Investigate

█ [¶ 19] Mrs. Harper argues that Fidelity had a duty to further investigate Mr. Harper's answers on his insurance application, and that Fidelity should have obtained his medical records rather than rely on the application itself. Fidelity, however, disputes the assertion that it was under a duty to investigate the answers Mr. Harper gave in his application when the application was submitted, especially because Fidelity had no reason to assume that the answers were not truthful or accurate.

█ [¶ 20] An insurer is under no duty to investigate the truthfulness of an applicant's responses unless it has notice that those responses might not be truthful or accurate. *White*, 831 F.Supp. at 1545. A majority of cases interpreting statutes similar to Wyoming's statute have held that an insurer does not have a duty to investigate, and is entitled to rely on the representations made by the applicant on his application.

---

ed 51–year–old bricklayer being asked ... medically technical questions at the end of his work day[.]" Without question, Mr. Harper's application for life insurance contained a number of misrepresentations.

Mrs. Harper urges this Court to find that her husband's insurance application form contained no misrepresentation because, she argues, Mr. Harper did not "knowingly" misrepresent his health status. Contrary to Mrs. Harper's argument, however, Wyoming law does *not* require a finding of a "knowing" misrepresentation. A

material misrepresentation will avoid coverage, even if it is made through mistake or in good faith. *All American Life & Casualty Co. v. Krenzelok*, 409 P.2d 766 (Wyo.1966); *Cohen v. Washington Nat'l Ins. Co.*, 175 Ill.App.3d 517, 124 Ill.Dec. 948, 529 N.E.2d 1065, 1067 (1988). A material misrepresentation—i.e., one that affects either the acceptance of the risk or the hazard assumed by the insurer—will void an insurance contract regardless of whether the misrepresentation was made innocently or with intent to deceive.

See, for example, *Twin City Bank v. Verex Assur. Inc.,* 733 F.Supp. 67, 71 (E.D.Ark. 1990) (interpreting Ark.Code Ann. § 23–79–107(a) (LexisNexis) which is verbatim to Wyoming's statute).

[¶ 21] In *White,* 831 F.Supp. at 1553, the Tenth Circuit weighed in on this very issue:

> Although the Tenth Circuit has not spoken to this issue as of the date of this order, this Court is inclined to follow the rulings of the other appellate and trial courts that have considered this issue and have rejected this position, concluding that the insurer is entitled to rely on an insured's representations. ... [Citations omitted.] As the court in Bageanis said, the insured was the one who had the burden "to supply complete and accurate information to the insurer." ... [Citations omitted.] Therefore, the Court concludes that the insurer did not have a duty to investigate and thus was entitled to rely on White's representations.

[¶ 22] Also, in a case similar to the instant one (and mentioned in *White* ), the insured omitted several hospitalizations for psychological problems and a history of suicide attempts from her insurance application (but did disclose three other hospitalizations for mental issues). *Mutual Ben. Life Ins. Co. v. Morley,* 722 F.Supp. 1048 (S.D.N.Y. 1989). She argued that the insurance company engaged in "lax and sloppy underwriting" and had the underwriter been more thorough and ordered medical records, her prior hospitalizations and suicide attempts would have been discovered, precluding her from insurance coverage. The court granted summary judgment to the insurance company, noting that the company was entitled to rely on the representations made by the applicant.

[¶ 23] Mrs. Harper insists that there were red flags that were ignored by Fidelity and, rather than investigate, the underwriter simply ignored the signs that warranted more study. Specifically, Mrs. Harper points to the conflicting MIB information versus the application regarding Mr. Harper's weight. The MIB listed his weight at 305 pounds, while his application stated his weight to be 275 pounds. Contrary to Mrs. Harper's assertions, however, the "red flags" in this case were adequately explained away by the underwriter: Indeed, Mr. Harper indicated his weight was 275 pounds, whereas the MIB reported his weight to have been 305. The underwriter testified that she looked at the different weight on the MIB report and assumed that Mr. Harper would have lost enough weight to fit into the guidelines which, for Mr. Harper, would have been 301 pounds. In the simplified underwriting process that was used in Mr. Harper's case, the underwriter is to rely on the health questionnaire and the MIB, which is what happened in this instance. Furthermore, Mr. Harper represented in his application that "[t]he statements made in this application are complete, true, and correctly recorded." Mr. Harper's knowledge in this instance was not limited to his "knowledge and belief," as in some cases. There, where the insurance application contains "knowledge and belief" language, the insurer must show that the insured intentionally made the misstatement or omission to rescind the contract. See *Joseph v. Zurich Life Ins. Co. of America,* 159 Fed. Appx. 114, 116, fn. 3 (11th Cir.2005).

[¶ 24] Based upon the law, and Mr. Harper's own assertions, Fidelity was under no duty to investigate and was entitled to rely upon Mr. Harper's application.

### Issue III—Promissory Estoppel

[¶ 25] Mrs. Harper next argues that because Fidelity issued Mr. Harper a life insurance policy, he did not seek coverage from another company—thus, the equities of the case require that the contract be enforced under the doctrines of promissory and equitable estoppel.

[¶ 26] The general theory of the doctrine of promissory estoppels is this: "If an unambiguous promise is made in circumstances calculated to induce reliance, and it does so, the promisee if hurt as a result can recover damages." *B & W Glass v. Weather Shield Mfg.,* 829 P.2d 809, 813 (Wyo.1992) (quoting *Goldstick v. ICM Realty,* 788 F.2d 456, 462 (7th Cir.1986)). Thus, the elements of a promissory estoppel claim are:

(1) [T]he existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3) a finding that injustice can be avoided only if the court enforces the promise.

*City of Powell v. Busboom,* 2002 WY 58, ¶ 8, 44 P.3d 63, 66 (Wyo.2002) (quoting *Roussalis v. Wyoming Med. Ctr., Inc.,* 4 P.3d 209, 253 (Wyo.2000)). See also, *Parkhurst v. Boykin,* 2004 WY 90, ¶ 21, 94 P.3d 450, 460 (Wyo. 2004). "The party who is asserting promissory estoppel is assigned the burden of establishing all of the elements of the doctrine with a standard of strict proof." *Roussalis,* 4 P.3d at 253, quoting *B & W Glass,* 829 P.2d at 819.

[¶ 27] In addition to establishing the existence of a clear and definite promise, a plaintiff must also show "action or forbearance of a definite and substantial character" to satisfy the second element of the doctrine. *Birt v. Wells Fargo Home Mortg., Inc.,* 2003 WY 102, ¶ 28, 75 P.3d 640, 653 (Wyo.2003). Furthermore, such action or forbearance must be the result of "reasonable reliance." *Id.* We have described reasonable reliance as follows:

In *Provence* [*v. Hilltop Nat'l Bank,* 780 P.2d 990 (Wyo.1989) ], we explained that detriment in reasonable reliance is closely tied to the existence of a clear and definite agreement. A reasonable person does not rely to his or her detriment on an oral agreement unless it is sufficiently clear and definite as to induce him or her to act. Provence. "There can be no estoppel as a matter of law when the asserted reliance is not justifiable or reasonable under the circumstances of the case considered as a whole." *Roth* [*v. First Security Bank of Rock Springs, Wyoming* ] 684 P.2d [93,] 97 [ (Wyo.1984) ] (citing *Matter of Simineo v. Kelling,* 199 Colo. 225, 607 P.2d 1289 (1980)). The representation that induces the reliance also must be the immediate or proximate cause of the act in reliance. *Roth.* The knowledge and sophistication of the relying party is to be considered in determining reasonableness (*Roth* ) and

consistent with the Restatement (Second) of Contracts § 90, we also consider the reasonable foreseeability by the promisor that the promisee would rely on the statement or representation. [*Inter–Mountain Threading, v.*] *Baker Hughes* [*Tubular Servs.,* 812 P.2d 555 (Wyo.1991) ].

*Id.,* ¶ 28, 75 P.3d at 653.

[¶ 28] In response to Mrs. Harper's estoppel claims, Fidelity first points out that under Wyoming Legislative guidelines, Mr. Harper's death was well within the two-year contestable period under Wyo. Stat. Ann. § 26–16–204 (LexisNexis 2009). Furthermore, Fidelity also argues that there is no evidence that Mr. Harper could have obtained other coverage. When viewing the facts in the light most favorable to Mrs. Harper, there exists a genuine issue of material fact as to whether Fidelity's issuing the policy constituted a promise that would have reasonably induced reliance.

[¶ 29] In addition to establishing that the promissor reasonably should have known that the promise would have induced reliance, Mrs. Harper must also show that Fidelity's promise actually induced action or forbearance to her husband's detriment. Although Mrs. Harper asserts that Mr. Harper "could have found another insurer" had Fidelity declined to issue the policy, Mrs. Harper offers no evidence that her husband could have or would have obtained life insurance from another company. In fact, the record shows that Mr. Harper was actually denied coverage by other companies.

[¶ 30] While the moving party bears the burden of showing that there are no material facts in dispute, the non-movant must offer more than "a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Williams v. West Chester,* 891 F.2d 458, 460 (3d Cir.1989). Here, Mr. Harper was clearly not the picture of health, and although he may have applied to another life insurance company, there is nothing in the record apart from his wife's assertions which suggests another life insurance company would have insured Mr. Har-

per. "Summary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). There is no basis to conclude that the equities in this instance require the insurance contract be enforced.

## Issue IV—Good Faith and Fair Dealing

[¶ 31] Mrs. Harper asserts that Fidelity breached the covenant of good faith and fair dealing by denying the benefits due under the policy without any reasonable or fairly debatable basis and by failing to fully and properly investigate.

[¶ 32] In order to recover on a claim like the instant one, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy, and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Darlow v. Farmers Ins. Exch.,* 822 P.2d 820, 824 (Wyo.1991). The test to be applied in determining whether bad faith has occurred is as follows:

> An objective standard is also used to determine whether an insurer has committed first-party bad faith. *Kirkwood v. CUNA Mut. Ins. Soc.,* 937 P.2d 206, 211 (Wyo.1997). The question is whether the validity of the denied claim is fairly debatable. *First Wyoming Bank, N.A., Jackson Hole v. Continental Ins. Co.,* 860 P.2d 1094, 1101 (Wyo.1993). The validity of a claim is fairly debatable if a reasonable insurer would have denied or delayed payment of benefits under the facts and circumstances. *Ahrenholtz v. Time Ins. Co.,* 968 P.2d 946, 950 (Wyo.1998). To establish a claim for first-party bad faith, a plaintiff must establish (1) the absence of any reasonable basis for denying the claim, and (2) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.

*Gainsco Ins. Co. v. Amoco Prod. Co.,* 2002 WY 122, ¶ 14, 53 P.3d 1051, 1058 (Wyo.2002).

[¶ 33] Not only does Mrs. Harper iterate her argument that Fidelity had a duty to investigate, but she argues that Fidelity unreasonably denied her claim and suggests that post-claim underwriting took place in this case. When "post-claim underwriting" occurs, an insurer simply fails to perform any actual underwriting until after a claim has been made. *Lewis v. Equity Nat'l Life Ins. Co.,* 637 So.2d 183, 188–89 (Miss.1994). See also Thomas C. Cady & Georgia Lee Gates, Article: *Post Claim Underwriting,* 102 W. Va. L.Rev. 809, 810 (2000) (concluding that post-claim underwriting is per se evidence of bad faith). Indeed, Mrs. Harper only suggests that this may have occurred in this case and does not altogether argue its existence. Nevertheless, it is our opinion that there is no showing by Mrs. Harper on appeal of an absence of a reasonable basis to deny the claim.

[¶ 34] After Fidelity received Mrs. Harper's claim for benefits, Fidelity followed its routine practice and ordered the medical records of the deceased. When it appeared that things were amiss, the records were sent to the chief underwriter who then gave his opinion that the misrepresentations (whether intentional or not) were material. The procedure followed is one which Mrs. Harper's expert testified is routine within the insurance industry. Under Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those rights that they are contractually entitled to exercise. See *Scherer Constr., LLC v. Hedquist Constr., Inc.,* 2001 WY 23, ¶ 19, 18 P.3d 645, 653–54 (Wyo.2001).

[¶ 35] Fidelity rescinded the policy of insurance because it determined, after obtaining an opinion from the chief underwriter, that there were material misrepresentations, omissions, and incorrect statements made on the insurance application which, if they had been known at the time, would have caused the application to have been rejected. There is no question of material fact that § 26–15–109 allows rescission under those circumstances. Accordingly, Fidelity was entitled

to summary judgment on whether it breached the duty of good faith and fair dealing.

## Issue V—Reasonable Expectations Doctrine

[¶ 36] Finally, Mrs. Harper argues that because the parties' contract was ambiguous, she should be allowed to recover under the "reasonable expectations" doctrine. In order to state a claim under the "reasonable expectations" doctrine, the plaintiff must show the subject contract is ambiguous as to the provision in dispute. *Ahrenholtz v. Time Ins. Co.*, 968 P.2d 946, 950 (Wyo.1998). The doctrine will not be applied where the insurance contract is plain and unambiguous. *W.N. McMurry Constr. Co. v. Community First Ins., Inc.*, 2007 WY 96, ¶ 21, 160 P.3d 71, 78 (Wyo.2007).

[¶ 37] The doctrine of reasonable expectations is explained as follows in *St. Paul Fire and Marine Ins. Co. v. Albany County Sch. Dist. No. 1*, 763 P.2d 1255, 1262 (Wyo. 1988):

> The doctrine of reasonable expectations is essentially a rule of construction that acknowledges the usual disparity of bargaining power between an insurer and the fact that insurance contracts are generally contracts of adhesion. See *Corgatelli v. Globe Life & Accident Insurance Company*, 96 Idaho 616, 533 P.2d 737 (1975), wherein the Idaho Supreme Court described the doctrine and applied it in a split decision, and *Casey v. Highlands Insurance Company*, 100 Idaho 505, 600 P.2d 1387 (1979), in which that same court disavowed and refused to adopt the doctrine. Under the doctrine, "the court will uphold the insured's reasonable expectations as to the scope of coverage, provided that the expectations are objectively reasonable." 2 G. Couch, Cyclopedia of Insurance Law 2d § 15:16 at 172 (Rev. ed.1984). Professor Keeton describes the operation of the doctrine in this fashion:

> The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.

[¶ 38] In regard to this issue, the district court was correct when it stated as follows:

> Mr. Harper was advised in the application that the information would be relied upon in issuing the insurance. The policy contained a contestability clause allowing challenge within the first two years of issuance. By his signature, Mr. Harper verified the answers contained in the application were true and correct. This [reasonable expectations] claim presumes that Mr. Harper can assume [Fidelity] will not rely upon his answers, which is contrary to the unambiguous language in the application.

As did the district court, this Court fails to see how any claim would exist under the doctrine of reasonable expectations.

## CONCLUSION

[¶ 39] There is no issue of material fact as to whether Fidelity properly rescinded Mr. Harper's insurance policy pursuant to § 26–15–109. Mr. Harper's application contained omissions and misrepresentations, and summary judgment is appropriate where the misrepresentation "is of such a nature that there can be no dispute as to its materiality." Such was the case in this instance. Furthermore, an insurer is under no duty to investigate the truthfulness of an applicant's responses unless it has notice that those responses might not be truthful or accurate. There is no basis to conclude that the equities in this instance require the insurance contract be enforced under the doctrine of promissory estoppel. Finally, the covenant of good faith and fair dealing was not breached, and no claim exists under the doctrine of reasonable expectations. Affirmed.