2012 WY 22

**Mark BRODERICK, Appellant (Plaintiff),**

v.

**DAIRYLAND INSURANCE COMPANY and Jonathan Schrack, Appellees (Defendants).**

**No. S–11–0096.**

Supreme Court of Wyoming.

Feb. 16, 2012.

Representing Appellant: Stephen R. Winship of Winship & Winship, P.C., Casper, Wyoming.

Representing Appellee Dairyland Insurance Company: Richard G. Schneebeck & Amanda M. Good of Hirst Applegate, LLP, Cheyenne, Wyoming. Argument by Mr. Schneebeck.

Representing Appellee Jonathan Schrack: Cameron S. Walker of Schwartz, Bon, Walker & Studer, LLC, Casper, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1]  The appellant was physically injured as a result of an accident caused by an

underinsured motorist. Prior to the accident, the appellant purchased a Dairyland Insurance Company (Dairyland) policy through his insurance agent, Jonathan Schrack (Schrack). Although the appellant requested "full coverage," the policy did not include underinsured motorist coverage. When the other driver's insurance did not fully cover the appellant's damages, the appellant sued Dairyland and Schrack, raising numerous theories as to why he should recover under the Dairyland policy. The district court granted Dairyland's and Schrack's motions for summary judgment. We affirm.

## ISSUES

[¶ 2]  Did the district court properly grant summary judgment in favor of Dairyland and Schrack?

## FACTS

[¶ 3]  In May 2008, the appellant and his wife met with Schrack to purchase insurance for the appellant's motorcycle. Schrack served as an agent for Dairyland and other insurers. The appellant purchased a Dairyland policy that included liability coverage and uninsured motorist coverage, both with limits of $100,000 per person, and $300,000 per accident, but did not include underinsured motorist coverage. The policy defines an uninsured motor vehicle as follows:

> An uninsured motor vehicle is a motor vehicle for which there is no bodily injury policy or liability bond available at the time of the motor vehicle accident with at least the minimum limits required by the financial responsibility law of the state in which your motorcycle is principally garaged.
>
> An uninsured motor vehicle also includes a motor vehicle which has insurance available at the time of the motor vehicle accident but the company writing it becomes insolvent or denies coverage.
>
> An uninsured motor vehicle is a hit-and-run motor vehicle that strikes you, or a motor vehicle you are occupying, if neither the driver nor the owner can be identified.[1]

1.  The policy thus defines an "uninsured motorist" as a driver who does not have the minimum

Neither the Supplemental Declarations Page of the appellant's policy nor the body of the policy itself made any mention of underinsured motorist coverage. All parties acknowledge that neither the appellant nor his wife read the policy.

[¶ 4] On July 11, 2008, the appellant was riding his motorcycle when another motorist ran a stop sign and collided with him, causing the appellant serious injury. At the time of the accident the other motorist had the minimum bodily injury insurance required under Wyoming law ($25,000 per person, $50,000 per accident). *See* Wyo. Stat. Ann. § 31–9–405(b)(ii) (LexisNexis 2011). With Dairyland's consent, the appellant settled with the other motorist's insurer for $25,000. The appellant's medical bills and lost wages exceeded that amount, however, and the following year he sought $75,000 from Dairyland, which amount represented his Dairyland policy limit less the amount received from the other motorist's insurer.

[¶ 5] After investigating the matter, Dairyland filed a declaratory judgment action in federal district court seeking a determination that it was not required to pay the appellant under the terms of the policy. The action in state district court commenced following the federal court's dismissal of Dairyland's lawsuit. Subsequently, Dairyland and Schrack filed separate motions for summary judgment. Following a hearing on the motions, the district court granted Dairyland's motion, finding that the uninsured motorist statutes, Wyo. Stat. Ann. §§ 31–10–101 and 31–10–102 (LexisNexis 2011), are not ambiguous and do not require underinsured motorist coverage, that the policy sold to the appellant was not ambiguous and did not include underinsured motorist coverage, that reformation of the contract was not appropriate because there was no mutual mistake, that application of the promissory estoppel doctrine was not appropriate because there was no evidence to establish the "existence of a clear and definite promise between Dairyland

and the [appellant]" or reasonable reliance on the part of the appellant, and that the doctrine of reasonable expectations was inapplicable because the policy was unambiguous in not including underinsured motorist coverage. The district court also granted Schrack's motion, finding that the appellant did not have a viable claim under the Wyoming Consumer Protection Act because of the failure to give statutory notice to Schrack, that promissory estoppel could not be applied because there can be no reasonable expectation of coverage where the appellant did not read the contract, and that the appellant could not rely upon Schrack's apparent authority to bind Dairyland where the policy clearly provided to the contrary. This appeal followed.

## STANDARD OF REVIEW

[¶ 6] The standard of summary judgment review is well established by this Court.

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to have a judgment as a matter of law. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 10, 25 P.3d 511, [514–15] (Wyo. 2001); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense that has been asserted by the parties. *Williams Gas Processing–Wamsutter Co. v. Union Pacific Resources Co.*, 2001 WY 57, ¶ 11, 25 P.3d 1064, [1071] (Wyo.2001). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. *Id.* We evaluate the propriety of a summary judgment by employing the same standards and by using the same

amount of liability coverage required by law. The term is sometimes, however, defined as a "driver who has no liability insurance." *Black's Law Dictionary* 1671 (9th ed. 2009). This distinction makes no difference in the present case because the driver who caused the accident with

the appellant met neither definition. An "underinsured motorist," by contrast, is a "driver [who] does not have enough liability insurance to cover the damage." *Id.* at 1665. The driver who caused the accident did meet that definition.

materials as were employed and used by the lower court. *Scherer Constr., LLC v. Hedquist Constr., Inc.,* 2001 WY 23, ¶ 15, 18 P.3d 645, [651] (Wyo.2001). We do not accord any deference to the district court's decisions on issues of law. *Id.*

*Trabing v. Kinko's, Inc.,* 2002 WY 171, ¶ 8, 57 P.3d 1248, 1252 (Wyo.2002).

[¶ 7] Statutory construction is a matter of law that we review *de novo. State ex rel. Dep't of Revenue v. Hanover Compression, LP,* 2008 WY 138, ¶ 8, 196 P.3d 781, 784 (Wyo.2008). Likewise, both the question of whether a contract is ambiguous and the interpretation of an unambiguous contract are matters of law that we review *de novo. Wadi Petroleum, Inc. v. Ultra Res., Inc.,* 2003 WY 41, ¶ 10, 65 P.3d 703, 707 (Wyo. 2003).

## DISCUSSION

[¶ 8] The appellant argues that Wyoming's Uninsured Motor Vehicle Coverage statutes (Wyo. Stat. Ann. §§ 31–10–101 and 31–10–102) are ambiguous. For that reason, he concludes the statutes should be "interpreted so as to not lead to the anomalous result that it would have been better for [the appellant] to be hit by a tortfeasor with no insurance at all." That argument suggests that this Court should read mandatory underinsured motorist coverage into the statute.

[¶ 9] We read statutes for their apparent meaning:

We endeavor to interpret statutes in accordance with the legislature's intent. We begin by making an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe all parts of the statute in *pari materia.* When a statute is sufficiently clear and unambiguous, we give effect to the plain and ordinary meaning of the words and do not resort to the rules of statutory construction.

*Johnson v. Johnson (In re Estate of Johnson),* 2010 WY 63, ¶ 8, 231 P.3d 873, 877

(Wyo.2010) (quoting *Loberg v. State ex rel. Wyo. Workers' Safety & Comp. Div. (In re Loberg),* 2004 WY 48, ¶ 5, 88 P.3d 1045, 1048 (Wyo.2004)).

[¶ 10] The statute at issue is entitled "Uninsured Motor Vehicle Coverage." The substantive part of the statute is found in the following section:

*No policy insuring against loss resulting from liability imposed by law for bodily injury* or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle *shall be* delivered or *issued* for delivery in this state with respect to any motor vehicle registered or principally garaged in this state *unless coverage is provided therein* or supplemental thereto, in limits for bodily injury or death as provided by W.S. § 31–9–102(a)(xi), under provisions approved by the insurance commissioner *for the protection of persons insured thereunder or legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness or disease, including death resulting therefrom....

Wyo. Stat. Ann. § 31–10–101 (emphasis added). The plain meaning of this section is to require motor vehicle insurers to provide coverage for an insured who is injured in an automobile accident caused by an *uninsured* driver. The statute makes no mention of underinsured motorist coverage and this Court has no authority to read such coverage into it. *Hanover Compression,* 2008 WY 138, ¶ 8, 196 P.3d at 784 ("Moreover, we will not enlarge, stretch, expand, or extend a statute to matters that do not fall within its express provisions."). "In contrast to many states that have passed legislation on the subject, Wyoming statutes governing uninsured motorist coverage are silent as to the treatment of *underinsured* motorist coverage." *Aaron v. State Farm Mut. Auto. Ins. Co.,* 2001 WY 112, ¶ 11, 34 P.3d 929, 932 (Wyo.2001) (emphasis in original). The Tenth Circuit Court of Appeals has echoed this interpretation: "In short, in contrast to its statutory mandate regarding uninsured motorist coverage, Wyoming has chosen to allow insurers to offer underinsured motorist

coverage on whatever terms they see fit, or even not to offer such coverage at all." *Winegeart v. Am. Alternative Ins. Corp.*, 224 Fed.Appx. 807, 809 (10th Cir.2007). The statute is unambiguous to the extent that it does not compel the insured to obtain, or the insurer to provide, underinsured motorist coverage.

[¶ 11] In addition to his statutory argument, the appellant contends that the uninsured motorist provisions of the Dairyland policy are ambiguous. In considering this allegation, the district court correctly applied the following principles:

> An insurance policy constitutes a contract between the insurer and the insured. As with other types of contracts, our basic purpose in construing or interpreting an insurance contract is to determine the parties' true intent. We must determine intent, if possible, from the language used in the policy, viewing it in light of what the parties must reasonably have intended. The nature of our inquiry depends upon how clearly the parties have memorialized their intent. Where the contract is clear and unambiguous, our inquiry is limited to the four corners of the document.

*State ex rel. Arnold v. Ommen*, 2009 WY 24, ¶ 37, 201 P.3d 1127, 1137 (Wyo.2009) (quoting *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 18, 123 P.3d 579, 587–88 (Wyo.2005)). Furthermore, "[w]hen interpreting a contract, 'the contract as a whole should be considered, with each part being read in light of all other parts.'" *Am. Nat'l Bank v. Sara*, 2011 WY 9, ¶ 11, 246 P.3d 294, 298 (Wyo.2011) (quoting *Dorr v. Wyo. Bd. of Certified Pub. Accountants*, 2006 WY 144, ¶ 16, 146 P.3d 943, 953 (Wyo.2006)). The district court determined that, when looked at as a whole, the policy was not ambiguous.

[¶ 12] The policy, like the statute, makes no mention of underinsured motorist coverage. The "crucial part of the Policy," according to the appellant, is "[t]his insurance covers bodily injury ... which results from the injury caused by a motor vehicle accident and suffered by you." This language appears, however, under the heading "Uninsured Motorist Insurance" and, we cannot read more into this language than plainly appears. The insurance policy purchased by the appellant is unambiguous in that it does not provide coverage for bodily injury incurred in an accident with an underinsured motorist.

[¶ 13] The appellant argues that, despite his failure to read his insurance policy, summary judgment should not have been granted on his contract and tort claims. The appellant has interpreted the district court's holding that his contract and tort claims are barred by his failure to read the contract as indicating that the appellant failed to mitigate damages. This is an improper interpretation of the law and of the district court's holding. Dairyland correctly argues that this logic would be more applicable in a situation where the appellant read the policy and was aware that it did not provide certain coverage, and failed to do anything about it.

[¶ 14] We have held that, in circumstances such as those presently before the Court, a failure to read one's insurance contract presents an absolute bar to recovery under contract and tort claims. *W.N. McMurry Constr. Co. v. Cmty. First Ins., Inc.*, 2007 WY 96, ¶ 37, 160 P.3d 71, 83 (Wyo.2007) (summary judgment appropriate where insured failed to read a policy that mistakenly excluded requested coverage). This Court has more recently reiterated this rule: "The law in Wyoming is that a policy holder has a duty to read his or her insurance policy." *Cathcart v. State Farm Mut. Auto. Ins. Co.*, 2005 WY 154, ¶ 49, 123 P.3d 579, 596 (Wyo.2005) (citing *Small v. King*, 915 P.2d 1192, 1194 (Wyo.1996) ("When purchasing insurance, a person has a duty to read the policy. If the policy is unacceptable, the person may either reject the policy or renegotiate the contract with the insurer."); *Feather v. State Farm Fire & Cas.*, 872 P.2d 1177, 1181 (Wyo.1994) (summary judgment was appropriate where appellant failed to read renewal notices which clearly indicated that the automobile at issue was not listed as covered by the policy); *Darlow v. Farmers Ins. Exch.*, 822 P.2d 820, 828–29 (Wyo.1991)). Moreover, we have held that the insured's failure to read the policy is available as a defense both to the insurer and to the agent. *Cordero Mining Co. v. United*

*States Fid. & Guar. Ins. Co.,* 2003 WY 48, ¶¶ 26, 30, 67 P.3d 616, 625–26 (Wyo.2003).

[¶ 15] The appellant also argues that the district court should have reformed the policy. "Reformation is an equitable remedy available in cases where a mistake in the drafting of the written contract makes the writing convey the intent or meaning of neither party to the contract." *Ohio Casualty Ins. Co. v. W.N. McMurry Constr. Co.,* 2010 WY 57, ¶ 15, 230 P.3d 312, 320 (Wyo. 2010). For reformation to be available there must be

> clear and convincing evidence of the following elements: (1) a meeting of the minds—a mutual understanding between the parties—prior to the time a writing is entered into, (2) a written contract, or agreement, or deed (3) which does not conform to the understanding, by reason of mutual mistake.

*Id.* (quoting *Hutchins v. Payless Auto Sales, Inc.,* 2002 WY 8, ¶ 19, 38 P.3d 1057, 1063 (Wyo.2002)). The district court concluded that there was no mutual mistake between the parties.

[¶ 16] We agree with the district court. "The required mutuality of a mistake can only be found if the parties had identical intentions as to the material terms of the policy." *Ohio Casualty,* 2010 WY 57, ¶ 20, 230 P.3d at 321. Regardless of what coverage the appellant hoped to purchase, Dairyland did not offer underinsured motorist coverage, nor did it intend to offer such coverage to the appellant. The appellant's belief that the policy contained underinsured motorist coverage was a unilateral, rather than a mutual, mistake.

[¶ 17] The appellant further argues that Schrack, as an agent of Dairyland, bound the insurer to any promises he made to the appellant. While it is not clear from the record what promises may have been made to the appellant or inferred by him, it is clear that Schrack's agency powers were limited.

> An agent has express actual authority to bind the principal when the principal, orally or in writing, specifically grants the agent the power to bind the principal. Implied actual authority is established by the course of dealings between the parties and the circumstances surrounding the case.
>
> Apparent authority is created when the principal holds the agent out as possessing the authority to bind the principal or when the principal allows the agent to claim such authority. To bind the principal under a theory of apparent authority, a third party must establish personal knowledge of, and reliance on, the apparent authority of the agent.

*Ohio Casualty,* 2010 WY 57, ¶ 39, 230 P.3d at 326.

[¶ 18] In *Ohio Casualty,* we found that the agent did not have the power to bind the principal or alter the terms of the contract with the third party insured because the following language was included in the contract:

> This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

2010 WY 57, ¶ 42, 230 P.3d at 328. The contract between the appellant and Dairyland contained a very similar provision:

**Changes In Your Policy**

> We'll automatically give *you* the benefits of any extension or broadening of this policy if the change doesn't require additional premium.
>
> The only other way this policy can be changed is by policy endorsement.

(Emphasis in original.) This section limits Schrack's powers to bind Dairyland and establishes his inability to change the terms of the contract without Dairyland's consent. The district court properly denied the appellant's request to reform the contract. Schrack did not have actual authority to bind Dairyland to provide underinsured motorist coverage, and the appellant cannot rely upon the doctrine of apparent authority, where he failed to read the clear language of the policy

establishing the contrary. *Id.* at ¶¶ 42–43, 230 P.3d at 328.

[¶ 19] The appellant also argues that summary judgment was not appropriate because the doctrine of promissory estoppel should have been applied. Promissory estoppel requires:

> (1) [T]he existence of a clear and definite promise which the promisor should reasonably expect to induce action by the promisee; (2) proof that the promisee acted to its detriment in reasonable reliance on the promise; and (3) a finding that injustice can be avoided only if the court enforces the promise.

*Harper v. Fid. & Guar. Life Ins. Co.*, 2010 WY 89, ¶ 26, 234 P.3d 1211, 1220 (Wyo.2010) (quoting *City of Powell v. Busboom*, 2002 WY 58, ¶ 8, 44 P.3d 63, 66 (Wyo.2002)). The district court found that there was no clear and definite promise made by Dairyland to the appellant.

[¶ 20] As stated earlier, Schrack did not have the authority to bind Dairyland to terms beyond those in the policy or to alter those terms. Regardless of what the appellant may have intended when he requested "full coverage," the policy he obtained did not provide underinsured motorist protection. There was no promise made to the appellant by Dairyland beyond what appeared in the terms of the policy. Had the appellant read the policy, or even just the declarations page, he would have seen what coverage was provided and what coverage was not provided, and would have had the opportunity to renegotiate the terms of the policy or purchase a different policy. "There can be no estoppel as a matter of law when the asserted reliance is not justifiable or reasonable under the circumstances of the case considered as a whole." *Harper*, 2010 WY 89, ¶ 27, 234 P.3d at 1220 (quoting *Roth v. First Sec. Bank of Rock Springs, Wyo.*, 684 P.2d 93, 97 (Wyo.1984)).

[¶ 21] The appellant argues further that the doctrine of reasonable expectations barred summary judgment. For such a claim to be valid the appellant "must show the subject contract is ambiguous as to the provisions in dispute." *Id.* at ¶ 36, 234 P.3d at 1222 (citing *Ahrenholtz v. Time Ins. Co.*, 968 P.2d 946, 950 (Wyo.1998)). *See also W.N. McMurry Constr.*, 2007 WY 96, ¶ 21, 160 P.3d at 78. As we have stated above, *see supra* ¶ 12, the policy at issue, which policy the appellant did not read, unambiguously does not provide underinsured motorist coverage. "A rule of construction that considers the reasonable expectations of the parties is of no assistance where the policy terms are clear and unambiguous. We will not absolve the parties to an insurance policy from the duty to read the policy." *St. Paul Fire & Marine Ins. Co. v. Albany County Sch. Dist. No. 1*, 763 P.2d 1255, 1263 (Wyo.1988). The appellant cannot claim that he had reasonable expectations of coverage that was not provided under an unambiguous policy that he did not read.

[¶ 22] Finally, the appellant argues that the Wyoming Consumer Protection Act (the Act) provides a viable cause of action against Schrack and that the claim is not barred by his failure to provide notice of the alleged violation of the Act. As recognized by the district court, this claim fails under the clear terms of the Act. Generally, the Act is to be enforced by the attorney general. Wyo. Stat. Ann. §§ 40–12–102(a)(vii) and 40–12–106 (LexisNexis 2011). The Act does, however, provide private remedies in limited circumstances. "A person relying upon an *uncured* unlawful deceptive trade practice may bring an action under this act for the damages he has actually suffered as a consumer as a result of such unlawful deceptive trade practice." Wyo. Stat. Ann. § 40–12–108(a) (LexisNexis 2011) (emphasis added). An uncured unlawful deceptive trade practice is defined as an unlawful deceptive trade practice of which the consumer "has given notice to the alleged violator pursuant to W.S. § 40–12–109" and either no offer to cure has been made within 15 days or there has been no cure within a reasonable amount of time after the acceptance of the offer. Wyo. Stat. Ann. § 40–12–102(a)(ix) (LexisNexis 2011). Notice must be provided to the alleged violator within the earlier of one year from discovery or two years from the transaction. Wyo. Stat. Ann. § 40–12–109 (LexisNexis 2011).

[¶ 23]   No notice was provided to Schrack of an alleged deceptive trade practice. The appellant argues that notice after the accident would have been futile because there could have been no cure—in other words, Schrack could not have added underinsured motorist coverage to the appellant's policy after the accident. Had the appellant read the policy, however, he could have notified Schrack prior to the accident that the policy did not provide underinsured motorist coverage, thereby providing the opportunity for negotiations for the addition of such coverage. The district court concluded that the appellant had no valid cause of action for an uncured deceptive trade practice under the Act.

## CONCLUSION

[¶ 24]   Wyoming's uninsured motorist statutes unambiguously do not require insureds to obtain, or insurers to provide, underinsured motorist liability coverage. The liability insurance policy the appellant obtained from Dairyland through Schrack unambiguously did not contain underinsured motorist coverage, and unambiguously disallowed changes in its terms except by policy endorsement. The appellant did not know these facts because he did not read the policy. The appellant's failure to read the policy is available as a defense to both Dairyland and Schrack as to the appellant's negligence and contract claims against them, and bars application of the doctrine of promissory estoppel. Further, the doctrine of reasonable expectations is not available to alter the unambiguous terms of a policy that the insured did not read. Neither can the policy be reformed to provide underinsured motorist coverage, because there was no antecedent mutual agreement that such would be provided in the policy. Schrack did not have actual authority to bind Dairyland to provide underinsured motorist coverage, and he did not have apparent authority to do so, given the unambiguous language of the policy to the contrary. Finally, the appellant cannot pursue a private remedy for an uncured deceptive trade practice under the Wyoming Consumer Protection Act because the statutorily required notice of the alleged deceptive trade practice was not given.

[¶ 25]   We affirm.